## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## BANKRUPTCY DIVISION
## DIVISION OF ST. THOMAS/ST. JOHN

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CHAPTER 11** |
| **TRAMCON, INC.,** | § | |
| | § | **CASE NO. 3:12-30011 (MFW)** |
| DEBTOR. | § | |

| | | |
|---|---|---|
| **TRAMWAY PROPERTIES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | AP. No. _____ |
| | § | |
| **INDEPENDENCE BANK,** | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff, Tramway Properties, Inc. ("Tramway"), by and through undersigned counsel, for its complaint (the "Complaint") states as follows:

## NATURE OF THE ACTION

1. Tramway is the landlord and unsecured creditor of Tramcon, Inc. (the "Debtor"). Tramway files this Complaint against Defendant, Independence Bank ("Bank") seeking declaratory judgment determining the validity, priority, and/or extent of the lien of the Bank in the property of the Debtor pursuant to Rules 7001(2) and 7001(9) of the Federal Rules of Bankruptcy Procedure (the "Federal Rules") and sections 506 and 552 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§

157(b)(2)(K) and 1334.

3. The relief sought in this Complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The statutory predicates for the relief sought herein are Bankruptcy Code Sections 105(a), 506 and 552 and Federal Rules 7001 and 9014.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

5. The Plaintiff Tramway is the Debtor's landlord and creditor.

6. Defendant Bank is a corporation, partnership, or entity that loaned the Debtor $7,000,000.00.

7. Defendant Bank's principal place of business is located at 1370 South County Trail, East Greenwich, Rhode Island.

8. Defendant Bank is subject to nationwide service of process pursuant to Federal Rule 7004.

## FACTS

9. On July 24, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code.

10. The Debtor continues to manage and operate its business as debtor in possession pursuant to Bankruptcy Codes Sections 1107 and 1108.

11. Prior to the Petition Date, Tramway and the Debtor, through predecessor owners and operators, entered into two lease agreements.

12. Specifically, on June 23, 1993, Sepp Gmuender and Associates, Inc. ("SGA"), a predecessor in interest to the Debtor, entered into a lease agreement of an easement (as amended, the "1993 Lease") known as Tramway Easement 100 (the "Easement") as shown and described

on P.W.D. No. D9-3889-T87 together with designated parking and staging areas on Tramway's adjacent properties, in order to operate a gondola style tram to carry passengers from the bottom of an area commonly known as Paradise Point to its peak (the "Tram"). A true and correct copy of the 1993 Lease is attached hereto and incorporated herein as Exhibit "A."

13. On February 11, 1994, the 1993 Lease was assigned by SGA to the Debtor (the "Assignment Agreement").

14. On May 30, 1997, the Debtor and Tramway entered into their second lease agreement (the "1997 Lease" and together with the 1993 Lease, the "Leases") to allow the Debtor to lease additional adjoining property from Tramway. A true and correct copy of the 1997 Lease is attached hereto and incorporated herein as Exhibit "B."

15. The Debtor has subleased parts of the property under the 1997 Lease to various subtenants, most without the consent of Tramway.

16. On November 11, 2010, Tramway, Debtor, and Bank entered into an Agreement for Landlord's Consent and Waiver with Respect to Leasehold Mortgages (the "Consent Agreement") in which Tramway permitted Debtor to execute a Leasehold Mortgage and Security Agreement in favor of Bank. A true and correct copy of the Consent Agreement is attached hereto and incorporated herein as Exhibit "C".

17. On November 11, 2010, the Debtor executed and delivered to Bank a Leasehold Mortgage and Security Agreement (the "Leasehold Mortgage") to secure a $7,000,000.00 loan from Bank to the Debtor. A true and correct copy of the Leasehold Mortgage is attached hereto and incorporated herein as Exhibit "D".

18. As additional security for the Bank's loan, the Debtor executed and delivered to Bank a separate Security Agreement (the "Security Agreement") which allegedly granted Bank a

security interest in the Debtor's property described below, and the proceeds and products thereof:

    a.    All equipment and machinery, including power-driven machinery and equipment, furniture and fixtures, in each case as now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connections therewith.

    b.    All passenger and commercial motor vehicles registered for use upon public highways or streets, now owned or hereinafter acquired, together with all replacements thereof, all attachments, accessories, parts, equipment and tools belonging thereto or for use in connection therewith.

    c.    All inventory, raw materials, work in process and supplies now owned or hereinafter acquired.

    d.    All accounts now outstanding or hereafter arising.

    e.    All contract rights and general intangibles now in force or hereafter acquired.

A true and correct copy of the Security Agreement is attached hereto and incorporated herein as Exhibit "E".

19. On September 13, 2012, the Bankruptcy Court held that the Leases were not terminated prepetition, and an Order consistent with the Bankruptcy Court's ruling was entered on September 25, 2012. *See* Docket No. 76.

20. The Debtor operates the Tram which carries passengers to and from the bottom of Paradise Point to its peak.

21. The Tram receipts are generated through either a point of sale transaction at the Debtor's walk-up ticket counter, through a docking cruise ship as part of the cruise ship's excursion package, or through onshore tour companies.

22. In the event a Tram ticket is obtained through a cruise or onshore tour transaction, tickets are remitted to the ship or tour operator who then generates an account payable to the

Debtor with subsequent payment remitted to the Debtor two or three weeks later.

23. Bank has asserted a perfected leasehold mortgage interest in the subtenant rents generated by the property leased to the Debtor by Tramway under the 1997 Lease, as well as all prepetition and post-petition revenue from the Debtor's Tram ticket revenue.

## COUNT I

## BANK HAS NO LIEN ON SUBTENANT RENTS UNDER THE LEASEHOLD MORTGAGE

24. Tramway repeats and re-alleges the allegations of paragraphs 1 through 23 as though fully set forth herein.

25. Under the Leasehold Mortgage, the Debtor granted Bank a lien in the subtenant rent collected by the Debtor from its subleases.

26. Through the Consent Agreement, Tramway subordinated its rights to the subtenant rent, subject to the condition that Bank exercises its right under the Leasehold Mortgage to cure any default of the Debtor under the Leases.

27. Prior to the Petition Date, the Debtor was in default under the Leases, and it currently remains in default under the Leases.

28. The Bank has not cured the default of the Debtor.

29. The Bank has advised Tramway that it has no intention to cure the 1997 Lease defaults.

30. As of the Petition Date, the Debtor had $67,442.49 in accounts receivable, all of which are attributable to past due subtenant rent. *See* Debtor's Schedule B.

31. As a result of Bank's failure to exercise its right and ability to cure the default of the Debtor under the Leases, Bank's security interest in the subtenant rent is junior to Tramway's interest in the same as Landlord under the Leases.

5

## COUNT II

### BANK HAS NO LIEN ON PREPETITION OR POST-PETITION TRAM RECEIPTS UNDER THE SECURITY AGREEMENT

32. Tramway repeats and re-alleges the allegations of paragraphs 1 through 31 as if fully set herein.

33. Bank asserts a security interest in the cash proceeds from any of Debtor's accounts, the payment of any contract rights, and the cash products of any equipment in which it holds a security interest.

34. As a result of this alleged security interest, Bank has claimed a first priority security interest in all prepetition and post-petition Tram receipts and the proceeds thereof.

35. Bank conceded in its Reply to Tramway's Limited Objection to Bank's Expedited Motion to Prohibit Use of Cash Collateral [Docket No. 92] that Tram receipts do not constitute rent under the Leasehold Mortgage. "The Bank does not dispute that the receipts are not rents." (Secured Creditor, Independence Bank's Reply to Tramway Properties, Inc.'s Limited Objection to Independence Bank's Expedited Motion to Prohibit Use of Cash Collateral ¶ 11.)

36. Upon information and belief, Bank was a depositary bank for certain Tram receipts attributable to credit card, cruise line, and tour operator tram revenue.

37. As of the Petition Date, the Bank was in possession of $18,988.14 of the Debtor's cash. *See* Debtor's Schedule B.

38. Bank consented to the post-petition use by the Debtor of this cash.

39. In doing so, Bank forfeited its security interest in the prepetition cash generated from Tram receipts, and any proceeds thereof.

40. Bank further claims a lien upon the uncollected prepetition accounts receivable.

41. In its Schedule B, the Debtor did not list any accounts receivable attributable to

Tram receipts. *See* Debtor's Schedule B.

42. Accordingly there were no prepetition accounts receivable to which Bank's alleged security interest attached, and any accounts receivable acquired by the Debtor after the commencement of its bankruptcy case is not subject to the Bank's alleged lien on accounts receivable.

43. The Bank is entitled to adequate protection in the nature of a replacement lien only if the Bank proves the existence of pre-petition accounts receivable generated from Tram receipts, a superior security interest in the same, and that such funds were not expended with consent of Bank.

44. Bank's security interest in the proceeds from prepetition accounts receivable paid into the Debtor's account with Bank was terminated upon it relinquishing said proceeds and permitting the Debtor's use of the same.

45. Furthermore, Bank's alleged security interest in the payment of any contract rights and the cash products of any equipment in which it holds a security interest does not extend to the post-petition Tram revenue.

46. Debtor's post-petition Tram revenue is the product of the labor, maintenance, and service of the Debtor, and, thus, it is not the proceeds or products of collateral in which Bank has a security interest.

## COUNT III

## DECLARATORY JUDGMENT

47. Tramway repeats and re-alleges the allegations of paragraphs 1 through 46 as if fully set herein.

48. Pursuant to Federal Rule 7001(9), this Court has the power to declare the rights,

7

status, and other legal relations and priority in the Debtor's property.

49. There is an existing dispute between and among the Bank and Tramway regarding: (A) the extent, if any, of the Bank's liens against the Debtor's subtenant rents and Tram receipts, and (B) the priority of any such the liens.

50. Tramway is entitled to declaratory relief pursuant to Federal Rule 7001(9) declaring and resolving the extent, validity, and priority of the parties' rights in the Debtor's property, including the proceeds thereof.

## **RESERVATION OF RIGHTS**

51. Tramway reserves all rights with respect to Bankruptcy Code section 506(c), and its ability to seek derivative standing to assert causes of action against the Bank on behalf of creditors of the Debtor's estate.

WHEREFORE Tramway respectfully requests that this Court enter an order:

1. Determining the validity, priority, and/or extent of the Bank's alleged lien in the Debtor's property.

2. Declaring and resolving the extent, validity, and priority of the parties' rights in the Debtor's property, including the proceeds thereof.

    3.    Granting such other and further relief as is just and proper.

Dated: October 17, 2012                                     Respectfully submitted,

**MOORE DODSON & RUSSELL, P.C.**

*/s/ Charles S. Russell, Jr.*
Charles S. Russell, Jr. (VI Bar No. 742)
Helen Kim, Esq. (VI Bar No. 1198)
5035 Norre Gade
P.O. Box 31
St. Thomas, VI 00804
Telephone: (340) 777-5490
Facsimile: (340) 777-5498
steve@mdrvi.com
helen@mdrvi.com

and

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**
Francis A. Monaco, Jr., Esq.
Ericka F. Johnson, Esq.
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: 302-252-4320
Facsimile: 302-252-4330
fmonaco@wcsr.com
erjohnson@wcsr.com

and

**REYNOLDS, REYNOLDS & LITTLE, LLC**
Robert P. Reynolds
Post Office Box 2863
Tuscaloosa, Alabama 35405
Tel: (205) 391.0073
Fax: (205) 391.0911
rreynolds@rrllaw.com

Attorneys for Tramway Properties, Inc.