## THE UNITED STATES DISTRICT COURT
## FOR THE UNITED STATES VIRGIN ISLANDS
## BANKRUPTCY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRAMCON, INC. | ) | Case No. 12-30011-MFW |
| | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

**SECURED CREDITOR, INDEPENDENCE BANK'S OBJECTION TO TRAMWAY PROPERTIES, INC. AND CHAPTER 11 TRUSTEE, ADAM HOOVER'S MOTION TO 1) APPROVE SETTLEMENT AGREEMENT, 2) APPROVE TERMINATION OF 1993 LEASE, AND (3) PROVIDE INDEPENDENCE BANK NOTICE OF THE CONTRACTUAL OPPORTUNITY TO CURE MONETARY AND NON-MONETARY DEFAULTS UNDER 1993 LEASE**

**AND**

**EMERGENCY MOTION FOR RELIEF FROM STAY**

Secured Creditor, Independence Bank (the "Bank"), files its objection (the "Objection") to Tramway Properties, Inc.'s ("Tramway" or "Landlord") and Chapter 11 Trustee, Adam Hoover's Motion to 1) Approve Settlement Agreement, 2) Approve Termination of 1993 Lease, and (3) Provide Independence Bank Notice of the Contractual Opportunity to Cure Monetary and Non-Monetary Defaults Under 1993 Lease (the "Motion" or the "9019 Motion") and alternatively files its Emergency Motion for Relief from Stay (the "Emergency Motion"). As grounds, Independence Bank would state as follows:

### BACKGROUND

1.      Prior to the Petition Date, Tramway and the Debtor entered into two lease agreements. Specifically, on June 23, 1993, Sepp Gmuender and Associates, Inc. ("SGA"), a predecessor in interest to the Debtor, entered into a lease agreement with Tramway Properties, Inc. ("Tramway") to lease an easement (as amended, the "1993 Lease") known as Tramway

Easement 100 (the "Easement") together with designated parking and staging areas on Tramway's adjacent properties, in order to operate a gondola style tram to carry passengers from the bottom of an area commonly known as Paradise Point to its peak (the "Tramway Gondola").

2.      On May 30, 1997, the Debtor and Tramway entered into its second lease agreement (the "1997 Lease") to allow the Debtor to lease additional adjoining property from Tramway. The Debtor subleased parts of the property under the 1997 Lease to various subtenants.

3.      On or about November 11, 2010, as collateral for a $7,000,000 loan to be used to improve the property leased by Tramway to Tramcon Inc., the Debtor granted to Independence Bank a security interest in the Debtor's real and personal property.

4.      On December 29, 2010, Tramway, the Debtor, and Independence Bank executed an "Agreement for Consent and Waiver With Respect To Leasehold Mortgages" (the "Consent Agreement").

5.      On July 24, 2012, the Debtor filed its Chapter 11 petition.

6.      On September 13, 2012, the Bankruptcy Court held that the Leases were not terminated prepetition, and an Order consistent with the Bankruptcy Court's ruling was entered on September 25, 2012.

7.      The 1993 Lease remains in effect, and, prior to the appointment of a Trustee, the Debtor filed a motion to assume it.

8.      The 1997 Lease was effectively rejected and terminated in October 2012.

9.      On November 14, 2012, Adam Hoover was appointed as Chapter 11 Trustee.

10.      The Debtor continues to operate the Tram which carries passengers to and from the bottom of Paradise Point to its peak.

11.    On December 24, 2012, the Court approved a short-term loan made to the Debtor by Tramway, the lion's share of which was to be used to pay Tramway's own administrative rent claim.

12.    In March 2013, when the Trustee expressed doubt as to whether the tram could continue operating without expensive repairs for which the Estate did not have sufficient funds, Independence Bank offered to loan $550,000.00 to the Estate in order fund continue operations and repairs until a plan could be confirmed, when the Debtor's property would be sold to the highest bidder.

13.    On April 25, 2013, under significant pressure from Tramway, which included violation of the Automatic Stay, the Trustee and Tramway filed the Motion.

14.    The Motion seeks the agreed termination of the 1993 Lease, the Debtor's **only** valuable asset, for the bargain price of only $15,000.00, effectively allowing Tramway to take over the Debtor's operations (the "Settlement").

15.    The Settlement would only benefit Tramway Properties, Inc. It is neither fair nor equitable, constitutes a *sub rosa* plan, violates the Landlord's Consent Agreement, and violates due process, the cornerstone of the Bankruptcy System.

16.    In an abundance of caution, on May 2, 2013, the Bank elected, pursuant to the Landlord's Consent Agreement, to cure the lease, and subject to Bankruptcy Court approval, to foreclose or otherwise take over the property. Consistent with the explicit requirements of the Consent Agreement, the Bank tendered a cure only for the payment of rent.

17.    On May 17, 2013, Tramway objected to the Bank's cure, alleging that, contrary to the Consent Agreement, Independence Bank's cure of only the payment of rent is deficient.

## DISCUSSION

I.  **THE 9019 MOTION IS A SUB ROSA PLAN AND SHOULD NOT BE APPROVED.**

   a.  *A 9019 Motion cannot achieve the aim of a Plan of Reorganization, as it lacks the procedural and disclosure safeguards required by the Code.*

18.   In determining whether to approve a settlement agreement, a Bankruptcy Court must:

> appraise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

19.   A Rule 9019 motion must be denied when it is "tainted with provisions unrelated . . . to the issue . . . [and is] in reality, . . . a vehicle . . . to implement a plan of reorganization." *In re Louise's*, 211 B.R. 798, 801 (D.Del.1997). In *Louise's,* Judge Farnan noted that the "*de facto* transfer of control of the Debtor to a creditor outside the plan confirmation process that convince[d him] that the Settlement Agreement cannot be considered or approved under Rule 9019." *Id.* at 802.

   b.  *This Motion would allow Tramway to take control of the Debtor's business outside of a Plan of Reorganization.*

20.   Here, this Court is faced with the identical issue as the Court in *Louise's*. While it may not appear, on its face, that the settlement is a *de facto* plan, given the nature of the Debtor's business and Tramway's actions during this case, it is obvious that this is yet another attempt by

4

Tramway to sidestep the Chapter 11 process, and take over the operation of the tram, all while ignoring the Debtor's creditors and the Bank's security interest.

21.    On September 13, 2012, this Court denied [D.E. 76] Tramway's first attempt to take over the project by way of a Motion for Modification of the Automatic Stay [D.E. 14]. In that Motion, just as here, Tramway ignored the actual language of the 1993 and 1997 Leases (attached as Exhibits C and D to Docket Entry 14), as well as the Landlord's Consent Agreement (attached as Exhibit A to Docket Entry 31).

22.    The 9019 Motion asserts that if Independence Bank does not cure the default[1] (in an amount which exceeds the appropriate cure amount by more than $620,000.00) within ten days of the mere service of the Motion, then *even before the Motion is heard*, the Bank's rights as to the lease are terminated, and the land and equipment will simply revert to Tramway[2], enabling it to operate the very same Tram which represents the entirety of the Debtor's business, effective July 1, for the meager sum of $15,000.00, which is insufficient to pay administrative claims, let alone priority and general unsecured claims.

23.    In sum, the Motion essentially seeks to dispose of the entirety of the Debtor's business, and allow Tramway to take over, in just ten days, without a hearing, and without the due process, solicitation and disclosure requirements imposed by the plan confirmation process. In fact, the Motion was not even served on a single unsecured creditor. *See* [D.E. 229]. As such, it is without question that the Motion should be denied. The appropriate action is to file a Plan of Reorganization and Disclosure Statement or seek conversion of the case (to facilitate an orderly,

---

[1] Such action is prohibited by Section 362 of the Bankruptcy Code. The Landlord's Consent Agreement requires, pursuant to section 2(4)(c)(i) that the Bank elect to foreclose its interest, as a condition precedent to curing the lease. Such an election would violate the Automatic Stay, an action which Independence Bank takes seriously, even if Tramway does not.

[2] See Section 2(5) of the Landlord's Consent Agreement, which provides that upon termination of the Lease, the Bank has no right to take possession of any equipment on the premises, despite any security interest the Bank may have.

above-board liquidation), either of which would provide the hope of a meaningful distribution to all classes of creditors, provides appropriate disclosures, and comport with the Bankruptcy Code's requirements that creditors be given a reasonable opportunity (and reasonable information) to consider the possible effect on their claims.

## II.    THE MOTION MUST BE DENIED AS THE SETTLEMENT IS NOT FAIR AND EQUITABLE

24.    In approving a settlement agreement, a court must "conclude that the compromise or settlement falls within the reasonable range of litigation possibilities." *In re Coram Healthcare Corp.,* 315 B.R. 321, 330 (Bankr.D.Del.2004). In determining whether to approve a settlement, the Third Circuit Court of Appeals has delineated four factors for the court to consider: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of creditors. *Will v. Northwestern Univ. (In re Nutraquest, Inc.),* 434 F.3d 639, 644 (3d Cir.2006).

25.    The "dispute" being settled is as to whether Tramcon can assume the 1993 lease, which it sought to do by Motion on October 11, 2012 [D.E. 94]. In order to assume a lease, a trustee must cure (or provide adequate assurance that the trustee will promptly cure), compensate for pecuniary loss resulting from default, and provide adequate assurance of future performance. 11 U.S.C. § 365(b).

> a.    *The Debtor has a high probability of success in litigating the issues settled by the Motion.*

26.    Here, Tramway has asserted that the Debtor does not have the means to cure the 1993 lease defaults. While the Bank would, and the Trustee *should*, disagree with this assertion, as Tramway has apparently added to the cure amount (the "Cure Amount") its every expenditure even remotely related to the Debtor, including an unrelated DIP loan (which was used to pay the

1997 leases, but would not be a default as to the 1993 lease, regardless), costs for improvements advanced to, or paid on behalf of the Debtor, and attorney fees in excess of $400,000.00.

27. In any case, no matter what the sum is, once this Court has determined the appropriate cure amount, Independence Bank has repeatedly indicated that it intends to cure the default as a condition to the assumption and assignment of the lease at a § 363 sale, should it be the high bidder, which the Trustee and Tramway assert is likely in their Motion.

28. Thus, the first factor weighs against approving the Settlement, since it is very unlikely that the Debtor will be unable to assume the lease, because whether or not the cure amount is large, either the Debtor, or the Bank, as the presumptive assignee, is absolutely capable of curing the lease, all while providing significant carveouts that would distribute to creditors far more than the $15,000.00 contemplated by the Settlement.

   b. *The Bank submits that the second factor, the probable difficulty of collection, is inapplicable to this Settlement.*

   c. *While the issues are complex, resolving the issues will result in no additional expense to the Estate.*

29. As to the third factor, the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending, it is clear that these issues are somewhat complicated. The expense, inconvenience and delay, however, weigh against approving the Settlement. While the Trustee may worry about adding administrative expense to the Estate, the issues related to this Motion: whether the lease is in default; what the cure amounts are; and whether the Debtor has the means to cure, can all be adjudicated with a single motion and a single evidentiary hearing. That is a hardly a heavy burden, especially since the 9019 Motion *itself* required the drafting of a single motion and attendance at a single evidentiary hearing.

30.     Furthermore, it does not matter to the general unsecured creditors ("GUC") whether a GUC receives no distribution from a \$15,000.00[3] settlement for which it received no notice, or whether it receives no distribution after the Trustee tries and fails to assume the only valuable interest the Estate has in an attempt to successfully reorganize or liquidate. At least with the latter option, the estate has some hope of distributing something to unsecured creditors. As such, the complexity and cost must weigh against approval, as the Debtor has absolutely nothing to lose, other than facing some conflict, in litigating the dispute.

*d.  This Settlement is wholly against the paramount interests of the creditors.*

31.     The last factor, the <u>paramount</u> interest of the creditors, could not weigh more heavily against approval of the Settlement Agreement. The creditors, other than Tramway Properties, Inc., gain absolutely nothing from this settlement and lose the only opportunity they have to receive any distribution whatsoever from the Estate. While Independence Bank has offered to step into the project, provide for payment of those claims which must be paid in full, and provide for a meaningful distribution to unsecured creditors, the Trustee has decided, in his business judgment, that a \$15,000.00 settlement is sufficient. This cannot be considered fair and equitable because the liquidation or sale of the Debtor's valuable leasehold interest will assuredly bring more than \$15,000.00 into the Estate, and will provide for a greater distribution to the creditors. To wit, a settlement where the creditors receive absolutely nothing cannot possibly be in their interests.

32.     Because this factor weighs so heavily against approval, the Bank submits that this factor alone would be sufficient for this Court to deny the Motion. Each and every factor, however, weighs against approval of such a one-sided Settlement.

---

[3] This Objection assumes that since the current administrative and priority claims exceed the \$15,000.00 by a factor of at least 40, no GUC will receive any distribution after the proposed settlement.

## III.  THE MOTION MUST BE DENIED AS NOTICE WAS NOT SUFFICIENT UNDER THE CIRCUMSTANCES

33.     According to the Affidavit of Service filed by Tramway, the Motion, which essentially disposes of the entirety of the valuable property of the Estate, was served only on the following parties: The United States Trustee (a nonparty), Independence Bank (the Secured Creditor), Ben Currence (former counsel for the Debtor), Scot McChain (former counsel for the Debtor and a potential administrative claimant) and Adam Hoover (the Chapter 11 Trustee). *See Affidavit of Service*, [D.E. 229]. Noticeably absent from this list are the unsecured creditors, the parties which have the most to lose from the approval of the Settlement, as the approval would eliminate the possibility that any such creditor would receive <u>any distribution at all</u>. Moreover, no certificate of service for the Notice and Order Setting Hearing on the 9019 Motion [D.E. 231] was ever filed.

34.     The IRS, whose $210,000.00 priority claims would receive no distribution if the Settlement is approved, received no notice. The U.S. Department of Labor, whose $8,400.00 claim would be wiped out, received no notice. The four scheduled priority employee benefit claimants, whose chance of recovery is eliminated if this Settlement is approved, received no notice. It is, presumably, for this reason that Bankruptcy jurisprudence proscribes *sub rosa* plans, as dispositive issues such as this Settlement can be disposed of without the strict notice and disclosure requirements of a plan.

35.     Bankruptcy proceedings are inherently likely to alter involuntarily a creditor's existing contract rights. It is for this reason that due process to creditors is the cornerstone of the Bankruptcy System. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1960). An "elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

9

of the action and afford them an opportunity to present their objections." *Id.* "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* "Where conditions do not reasonably permit such notice," there may be an exception to such service. *Id.*

36. This Court's local rules are designed to afford such notice to interested parties. For this reason, the rules require the filing of a certificate of service within seven days. LBR 2002-1. Furthermore, "service by paper" is required on any party in interest not receiving electronic notice. *Id.* Here, despite knowledge of the effect of the Settlement on interests of these creditors, the Movants chose not to serve them. It could hardly be argued that conditions do not reasonably permit notice. According to the Local Rules, if "a filing is not in substantial compliance with [the] local bankruptcy rules or procedures, an order may be entered dismissing the motion . . . ." LBR 9013-4(F). Because the granting of the motion without proper notice to a party in interest would be violative of due process, dismissal of the Motion is the appropriate remedy.

**IV.   THE MOTION MUST BE DENIED AS TO ITS EFFECT ON INDEPENDENCE BANK, AS THE RELIEF SOUGHT VIOLATES THE CODE AND THE LANDLORD'S CONSENT AGREEMENT, AND TRAMWAY MUST BE ENJOINED FROM TERMINATING INDEPENDENCE BANK'S CURE RIGHTS**

37. In the Motion to Compromise the Controversy between the Debtor and Tramway Properties, Inc., the parties seek to "settle" Independence Bank's rights pursuant to its leasehold mortgage. Despite the fact that this is wholly improper for a two-party 9019 Settlement, Independence Bank agrees with the parties to the Motion that this Court has the jurisdiction to determine the extent and amount of Independence Bank's cure rights, as its cure necessarily involves the rights and property interests of the Debtor.

### a. The Cure Amount is inflated, excessive, and contrary to the Code.

38.     As a preliminary matter, the cure amounts are excessive. It seems that Tramway does not delineate between what amounts constitute cure, administrative claims and Tramway's General Unsecured Claim. The attorney fees account for the vast majority of the cure. "Attorneys' fees are recoverable under section 365(b)(1) only if they are reasonable." *In re Crown Books Corp.*, 269 B.R. 12, 15 (Bankr.D.Del.2001). $400,000.00 for attorney's fees, (including concurrent representation by four law firms) for a single lease (sixteen times the rent arrearage) is absolutely unreasonable for a case of this size, especially considering that the Bank has always voluntarily offered to cure the rent defaults. Tramway cannot simply run up attorney fees in order to make the lease incurable, thereby stripping the Estate of its statutory right to assume.

39.     Furthermore, "claims relative to amounts necessary to cure a lease default must be traced to and flow from the relevant lease agreement." *In re Rowland*, 292 B.R. 815 (Bankr.E.D.Pa.2003). Here, there is no evidence that Tramway has delineated which fees, costs and expenditures are due solely to the Debtor's 1993 lease default.

40.     Additionally, Tramway exaggerates the default as to the EDC; Tramway asserts that such default can be cured only by the "full restoration" of EDC benefits and the conclusion of the bankruptcy. The "full restoration" claim is not supported by the text of the 1993 Lease. Section XXIII of the 1993 Lease provides that the parties need only use their "best efforts" to obtain the mutual sharing of benefits. The Trustee's diligent efforts to do so, as admitted within the text of the Joint Motion itself, obviously meet this criterion, and are, themselves, a cure to the non-monetary default, should one even exist.

41.     Next, the Motion omits that the EDC benefits have not been terminated. In fact, those benefits remain in place, and while the EDC seems reluctant to *modify* the EDC certificate,

it has given no indication that it intends to terminate the benefits. Additionally, the Joint Motion seems to indicate that the 1993 Lease is unassumable without the assumption of the Joint Venture Agreement. Section XXIII(2) of the 1993 Lease is abundantly clear that the Joint Venture Agreement is an entirely separate agreement from the 1993 Lease.

42.    As an example, Tramway's default letter suggests that it be reimbursed for Americans with Disabilities Act (ADA) compliance expenditures. While it is unclear if this could constitute a default on the 1993 lease, Tramway had notice of any ADA deficiencies in 2006, when the relevant ADA complaint was filed. In 2010, however, in Section 2(2) of the Landlord's Consent Agreement, the Landlord represented there existed "no breach by either party to the respective Lease Agreements, under the respective Lease Agreements." Yet, in 2013, the Landlord has included it as a default which must be cured, further evidencing intent to inflate the cure.

43.    Lastly, in its default letter, Tramway insinuates that the Debtor's continued bankruptcy is somehow a default in and of itself. Obviously, should there be an *ipso facto* default, it is quite obvious that such a default is unenforceable in Bankruptcy.

44.    It appears that Tramway has inflated the cure by requiring the Debtor to reimburse it for every expenditure it has made related to this case, including DIP financing, Trustee appointment, improvements, the joint employment of Murray Pridham, etc. Additionally, the Motion exaggerates the nonmonetary defaults and overstates their cure as well. The lease documents do not require these expenditures to cure a default and neither should this Court.

45.    In fact, nowhere does Tramway even account for whether, and to what extent, any of these can be traced to and flow from the 1993 Lease, rather then the 1997 Lease, the Joint Venture Agreement, or its own costs which are incurred by any creditor in a Bankruptcy Case. In

the Motion, however, the Trustee and Tramway explain that the some of the very expenditures included in the cure letter, such as improvements to Paradise Point, were in furtherance of the 1997 Lease. By including those expenditures in the cure amount, Tramway misleads the Estate, Independence Bank, and this Court. These excessive amounts prove that an evidentiary hearing to determine the proper cure amount is absolutely necessary.

> b.   *The proposed treatment of Independence Bank is contrary to the Landlord's Consent Agreement*

46.    Tramway and the Trustee cite to section (2)(4)(b) of the Consent Agreement, in computing time for termination. But Tramway, as it has repeatedly in this case, ignores the appropriate provisions of the Consent Agreement.

47.    First, the very next subsection, section (2)(4)(c) provides that "Landlord agrees that it will take no action to effect a termination of either of the Lease Agreements in the event of a breach of either, nor exercise any other remedy by reason of a default by Tenant, without first giving to Lender a reasonable time to foreclose or otherwise acquire the interest of Tenant," provided that Independence Bank:

> i.   Elects to do so in writing;
>
> ii.   Cures all "defaults in the payment of **Rent**";
>
> iii.   Cures "all non-monetary default capable of being cured by an entity not in possession. . . .";
>
> iv.   Diligently pursues foreclosure of its interest; **and**
>
> v.   Cures non-monetary defaults following taking possession.

(emphasis added)

48.    Because (iv) is not possible, as it is prohibited by the automatic stay, the Bank cannot possibly exercise its cure right until after the lease is rejected, should this Court so order.

At that point, Independence Bank would be required (within 10 days) to elect to do so in writing, cure all defaults in the payment of **rent,** and take action to acquire the property. The Bank has never guaranteed the Debtor's DIP loan from Tramway, and is not required to pay it off in order to exercise its cure rights as to the 1993 lease. As Tramway is well-aware, the Bank's attorneys have held the rent cure amounts for the 1993 Lease in trust since the commencement of this case. As the Bank presented to the Court at the hearing on Tramway's Stay Relief Motion, the Bank has held such funds in trust, and has not transferred those funds to Tramway, in an abundance of caution that doing so would violate the automatic stay. Indeed, upon the filing of this motion, those funds were transferred to Tramway, to be held in trust until and unless the Court actually terminates the Debtor's valuable property rights, and those funds were returned.

49.    The 1993 Lease has not yet been terminated or rejected. Yet the Motion and the Settlement Agreement would force the Bank to assume the outcome of the Hearing on the Motion and violate the automatic stay, or lose its contractual right to cure. Indeed, the Bank opposes the Settlement, as it is against the interests of the Estate and its creditors to enter into such an agreement. If, however, the Court approves the Settlement, then the Bank will absolutely exercise its right to cure. To procedurally strip the Bank of its right to cure by a two-party settlement motion, however, is unjust, inequitable and should not be approved by this Court. For this reason, the Bank requests an appropriate judicial determination of the cure amounts as to the Debtor.

V.    **CONCLUSION**

50.    For the reasons set forth in the above Objection, the Proposed Settlement is neither fair nor equitable. It is a self-serving proposal by a creditor trying to take over the successful part of the Debtor's operations while shedding its debts, the quintessential *sub rosa* plan.

14

51.    The approval of the Settlement is contrary to the Bankruptcy Code and the secured creditor's rights pursuant to the loan and consent documents. The Motion seeks to strip Independence Bank of its cure rights by imposing an inflated cure amount on an artificial deadline, without a hearing or court approval. The Motion would eliminate the claims of nearly every creditor, most of which received no notice. Because the Motion seeks to so greatly prejudice the rights of Independence Bank and other creditors, the denial of the motion is warranted.

52.    Finally, for the reasons set forth above, the Bank is not adequately protected. Because the settlement seeks to eviscerate the Bank's security interest, thus foreclosing on any opportunity for the Bank to recover any portion of its loan, it is beyond question that the Bank is not adequately protected and stay relief pursuant to 11 U.S.C. § 362(d)(1) is warranted.

WHEREFORE, Independence Bank requests this Court (a) deny the Motion; (b) enter an order (i) setting an evidentiary hearing to determine the appropriate cure amounts for both assumption by the Estate and for Independence Bank's contractual cure pursuant to the Landlord's Consent agreement, and alternatively, (ii) granting stay relief to the Bank to pursue an *in rem* action against its collateral; and (c) for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**MARSHALL GRANT, P.L.**
Attorneys for Independence Bank
197 South Federal Highway, Suite 300
Boca Raton, Florida 33432
Telephone No. 561.672.7580
Facsimile No. 561.672.7581
Email: efile@marshallgrant.com

By:   /s/ Lawrence E. Pecan
     ADAM D. MARSHALL
     Florida Bar No. 0579823
     Joe M. Grant
     Florida Bar No. 137758
     LAWRENCE E. PECAN
     Oklahoma Bar No. 30901
     (admitted pro hac vice)

     --and--

     /s/ Christopher A. Kroblin
     CHRISTOPHER ALLEN KROBLIN, ESQ.
     V.I. Bar No. 966
     KELLERHALS FERGUSON FLETCHER KROBLIN LLP
     9100 Havensight
     Port of Sale, Suite 15-16
     St. Thomas, VI 00802
     Telephone: (340) 779-2564
     Email: ckroblin@kffklaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** under penalty of perjury that on this 4th day of July, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

EXECUTED ON: July 4, 2013

By:

By:    /s/ Lawrence E. Pecan
       LAWRENCE E. PECAN

## SERVICE LIST

### SERVED VIA CM/ECF NOTICE AND U.S. MAIL

- Benjamin A. Currence       currence@surfvi.com
- Scot F. McChain            Scot@McChainlaw.com
- Martin P. Ochs             martin.p.ochs@usdoj.gov
- Charles S. Russell         steve@mdrvi.com
- Adam Hoover                ahoover@attglobal.net, ahoover@ecf.epiqsystems.com
- Carol Rich                 crich@dudleylaw.com
- A. Jennings Stone          ajstone@vilaw.com, chart@vilaw.com;cjones@vilaw.com
- Donald F. Walton           guy.gebhardt@usdoj.gov,martin.p.ochs@usdoj.gov

**SERVED VIA U.S. MAIL**

Tramcon, Inc.
9617 Estate Thomas
St. Thomas, VI 00802

Tramway Properties, Inc.
713 Indian Hills Dr.
Tuscaloosa, AL 35406

District Court of the Virgin Islands
Bankruptcy Division
5500 Veterans Drive, Suite 310
St. Thomas, VI 00802

#1 Gopher
P.O. Box 305137
St. Thomas, VI 00803

A Pool Service
P.O. Box 503214
St. Thomas, VI 00806

ASCAP
21678 Network Place
Chicago, IL 60673-1216

Ackley Media Group
P.O. Box 302179
St. Thomas, VI 00803

Alert #1
P.O. Box 11599
St. Thomas, VI 00801

Atlanta Refrigeration
1231 Collier Road, Suite 0
Atlanta, GA 30318

BMI
P.O. Box 630893
Cincinnati, OH 45263-0893

Bellows International
4D-3000 Contant
St. Thomas, VI 00802-2695

Bernard Liburd
P.O. Box 8014
St. Thomas, VI 00801

Caribbean Food Service, Inc.
3293 Contact, Suite 119
St. Thomas, VI 00802-6113

Central Air, Inc.
P.O. Box 8825
St. Thomas, VI 00801

Chi-Co's Distribution
#18 Lindberg Bay
St. Thomas, VI 00802

ColorMax
Nisky Business Center, Suite 21-6
St. Thomas, VI 00802

Cool Signs
6100 Red Hook Quarter, Suite C2-2
St. Thomas, VI 00802

Da Vybe
P.O. Box 223525
Christiansted, VI 00820

Dadlies Trucking And Water Delivery
P.O. Box 9622
St. Thomas, VI 00801

Daily News
9155 Estate Thomas
St. Thomas, VI 00802

Diamond Crown Mountain Water,
LLC
P.O. Box 306918
St. Thomas, VI 00803

Economic Development Commission
5055 Norre Gade
St. Thomas, VI 00802

Globe Electric
P.O. Box 301709
St. Thomas, VI 00803

Hunter Food & Spirits STT
P.O. Box 502427
St. Thomas, VI 00805-2427

ICC TV2
One Beltjen Place
St. Thomas, VI 00802

INTERNAL REVENUE SERVICE
INSOVENCY UNIT
CITY VIEW PLAZA II
48 CARR 165 SUITE 2000
GUAYNABO, PR 00968-8000

Impulse Consultants
6501 Red Hook Plaza, Suite 201
St. Thomas, VI 00802

Independence Bank,
c/o Marshall Grant PL
197 S. Federal Hwy, Suite 300
Boca Raton, FL 33432

Island Boys
6024 Frydenhoj Estate
St. Thomas, VI 00802

Island Oasis
P.O. Box 842826
Boston, MA 02284-2826

Jefferson Faustin
6024 Est. Frydenhoj
St. Thomas, VI 00802

Judy Perez
394-308 Anna's Retreat
St. Thomas, VI 00802

Lew Henley
7227 Bovoni Homes 17-A
St. Thomas, VI 00802

Luxury Hotel Publications
122 Water Street
Baraboo, WI 53913

MSI Building Supplies
3814 Crown Bay #8
St. Thomas, VI 00803

Media Marketing, Inc.
P.O. Box 326
St. Thomas, VI 00804

Melee Media
5330 Yacht Haven Grande, Box #2
St. Thomas, VI 00802

Merchants Market
6800 Smith Bay
St. Thomas, VI 00802

Mock LeBlanc Brown, Inc.
P.O. Box 306090
St. Thomas, VI 00803

Ocean Systems Laboratory Of St.
Thomas
6194 Estate Frydenhoj #43
St. Thomas, VI 00802

Ogletree Deakins
P.O. Box 89
Columbia, SC 29202

Onboard Media
1691 Michigan Avenuem Suite 600
Miami, FL 33139

Paint Depot
4003 Raphune Hill Rd, Ste. 10
St. Thomas, VI 00802

Power House DJ
143a-21 Anna's Retreat
St. Thomas, VI 00802

Premier Wines & Spirits
P.O. Box 502790
St. Thomas, VI 00805

Sams Food Distribution
P.O. Box 25099
San Juan, PR 00928

Sanitary Trashmoval Services
P.O. Box 1523
St. Thomas, VI 00804

Sanitation Solution, Inc.
P.O. Box 11970
St. Thomas, VI 00801

Sleepy' Trucking $Water Delivery
P.O. Box 9235
St. Thomas, VI 00801

Sugar Apple Design
6501 Red Hook Plaza, Ste. 201
St. Thomas, VI 00802

THE BORNN FIRM, PLLC
David A. Bornn, Esq.
5079 Norre Gade Ste. 1
St. Thomas, VI 00802-6785

Tramway Properties
2123 9th Street, Suite 206
Tuscaloosa, AL 35401

Tramway Properties, Inc.
C/O Robert P. Reynolds
Post Office Box 2863
Tuscaloosa, AL 35403

U.S. Department of Labor - OSHA
1510 F.D. Roosevelt Ave, Ste 5B
Guaynabo PR 00968

V.I. Department Of Labor - OSHA
St. Thomas, VI 00802

Vinod Dadlani
c/o BoltNagi PC
5600 Royal Dane Mall, Ste. 21
St. Thomas, VI 00802

Virgin Islands Bureau of Internal
Revenue
6115 Estate Smith Bay Suite 230
St. Thomas VI 00802

WAPA
Attn: General Counsel
PO Box 1450
St. Thomas, VI 00804

WSTA
P.O. Box 1340
St. Thomas, VI 00804-1340

West Indies Corporation
P.O. Box 250
St. Thomas, VI 00804-0250

Adam Hoover
Law Office Of Adam Hoover
P.O. BOX 24342
CHRISTIANSTED, VI 00824

Benjamin A. Currence
BENJAMIN A. CURRENCE P. C.
P.O. Box 6143
St. Thomas, VI 00804-6143

Donald F. Walton
Office of the United States Trustee
75 Spring Street, S.W.
Suite 362
Atlanta, GA 30303

Martin P. Ochs
Office of the United States Trustee
75 Spring Street, S.W. Room 362
Atlanta, GA 30303

Scot F McChain
ILP+ McChain Miller Nissman
53A Company Street
Christiansted, VI 00820

Scot F. McChain
Law Offices of Scot F. McChain PC
1142 King Street
Christiansted, VI 00820